The next case this morning is 524-0885. The Jamie Crane Trust, etc. et al. v. Heartland Pathways. Arguing for the appellant is Tracy Nally. Arguing for the appellee is Daryl Willems. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, counsel, appellant. If you are ready, you may proceed. I'm ready, and good morning. May it please the court and counsel, I am Tracy Nally, representing the defendant appellant in this case. In the defendant's brief on appeal, I made several arguments why the judgment of the trial court should be reversed, but I'm only going to focus on two of them for purposes of this argument, and I'll stand on my briefs with respect to the remainder. The first reason that this case should be reversed by the appellate court is because the plaintiffs did not bring this case in time. They violated the 20-year statute of limitations that applies to this case under 735 ILCS 5-13-101, and the second argument I'm going to make is that the reason this trial court should have vacated the default judgment that was entered was that the proof that they presented to the trial court, that the plaintiffs presented to the trial court did not conform to the pleadings of the complaint. The sworn affidavit submitted by the plaintiffs did not conform to the pleadings of the complaint. Because the defendant was defaulted in this case, we've got to focus on the plaintiff's theory of the case and what is required of the plaintiffs in their pleadings and proof for it to be sufficient to support the default judgment. Now, in their complaint, the plaintiffs described the chain of title to the disputed land, saying that it came from the original landowners and a railroad right-of-way was conveyed to the Havana, Lincoln, and Champaign Railroad in 1867 or after by condemnation. Then the land was conveyed by the Havana Railroad to the Illinois Central Railroad in 1902. And finally, the Illinois Central Railroad conveyed the land to the defendant in 1988 by deed. This is plaintiffs pleading the chain of title to the disputed land in the complaint. Then the go on to complain that they owned the land when the Illinois Central Railroad gave it away to the defendant. And the reason they owned the land is because they were abutting landowners and that the Illinois Central Railroad had abandoned the right-of-way and that there's automatic reversion by operation of law that occurred in 1986 when the railroad was abandoned and that they came in ownership of the land in 1986 as a result of the abandonment and the fact that they are abutting landowners. Now, the only deed in the record is the deed from the Illinois Central Railroad to the defendant. In 2023, 34 years after the conveyance of the disputed land from the Illinois Central Railroad to the defendant, plaintiff brought this case asking the trial court to remove the defendant's deed from their chains of title and declare and remove defendant's rights to the land. Now, with that said, and assuming that's all correct because this is a default case, the case must nevertheless be reversed because the case was not brought under the statute of limitations of 13-101. 13-101 has a 20-year limitation period. As of 2023, when this case was filed, there would have been no document recorded with the DeWitt County Recorder of Deeds that showed the reversion of land. A search of the title would show that the land was owned by the defendant in 2023 when this case was filed. The defendant's interest in the land was that represented by the deed that's in the record. Plaintiffs say that Illinois Central Railroad gave away its land in 1988. They say that Illinois Central couldn't do that. They had no title. They had no authority. They want their title back. They want to remove the defendant's rights in the land that is represented by the deed. Now, that is an action to recover land that is addressed in the statute of limitations of 13-101. Illinois Central had no authority to give away the land. The public record shows that the land was, in fact, given away 34 years prior to the defendant, my client, and they have not satisfied the statute of limitations. This court, under a de novo standard of review, can hold in my client's favor based on the statute of limitations issue. I think the language of the statute itself is very clear, but it becomes even more clear by the example of the case of Supermix of Wisconsin versus Natural Gas Pipeline Company of America, which is cited in defendant's briefs. And in that case, Supermix bought a lot of land for mining sand and gravel. Across the land, there was a natural gas pipeline easement. That easement was recorded in 1945, and Supermix bought their lot in 2003. When Supermix wanted to mine the land under the pipeline easement, they couldn't do it because that easement was there. It had recorded, it was reflected on the record of the county, and so they asked the gas pipeline to move, and they said, no, we're not going to move. We were here, 1945, we have an easement. So Supermix sued the pipeline company and had two counts. The first count is where they contested the easement itself, the document recorded. And the second count was an inverse and for the easement, and so that the easement wasn't with effect. And the trial court dismissed both of those counts. And both of them were beyond the statute of limitations because they said that the right of action accrued in 1945 when that easement was recorded, and that they didn't bring the case until 2018, 73 years later, and so they were way beyond the 20-year limitation period. Now plaintiffs claim the 20-year limitation period doesn't apply, but they've never offered another limitation period that applies. If this was a trespass case, it would be a five-year limitation period. If it was a case to construe the deed between the Illinois Central Railroad and the defendant, that's a written contract. That would be a 10-year limitation period. If this is an ejectment case or similar, that's, again, a 20-year limitation period under 13-101. They haven't suggested another limitation period because any other limitation period is shorter than the 20-year limitation period that I think applies in this case. This is a 20-year period. They filed their case 14 years too late, and this court can decide the whole case, reverse the case under the de novo standard of review, award, dismiss the case, and hold in favor of my client. That's my first argument. My second argument is with respect to the judgment itself that was entered by the trial court. The trial court relinquished its duty to make the proof submitted by the plaintiffs conform to the pleadings of their complaint. It believed it had no duty to do so because defendant was in default. Because there was a default, the trial court allowed the plaintiffs to define the terms of the relief they were awarded regardless of the relief they sought under the terms of their complaint. But the law requires conformity. A default judgment does not give plaintiffs a golden ticket. Cases cited to the trial court in the motion to vacate judgment and cited in this court on appeal show that even in a default situation, plaintiffs must conform to proof, and proof must conform to pleadings, and the pleadings of the complaint frame the issues and circumscribe the relief that the court is empowered to order. Now under their theory of case, the plaintiffs have to show who every plaintiff is, they have to show the land the plaintiffs own that abut the defendant's land, they have to identify the defendant's land that they claim they now own by reversion, and they have to prove that the Illinois Central Railroad actually abandoned that land of defendants that they now claim to own. They didn't prove these facts, and they never responded to this issue in the trial court, and they didn't respond to this issue or this argument in their appellee's brief in this appeal. The most erroneous part of the to grant judgment to people, limited liability companies, and trustees of trust that were not named as plaintiffs in the complaint. There are 16, at least, additional people and entities that were awarded parcels of defendant's property when they were not named as plaintiffs in the complaint. If they were not named as plaintiffs, the trial court had no personal jurisdiction over them and could not award them parcels of defendant's land. Judgments that are entered that have no personal jurisdiction are void. Void judgments, they can be contested at any time. Now, likewise, because there were actually other people that owned the land, people not plaintiffs that owned the land based on plaintiff's proof and the motions to supplement the record at the time filed at the entry of the default judgment, it became clear that about 12 of those plaintiffs, the named plaintiffs, didn't own land that abutted defendant's land. Maybe a relative or an entity related to them owned the land, but they did not own the land. And if they personally did not own the land, they had no standing to even bring the case. Let me give you an example. There were four plaintiffs, Laura Russ Dirks, Catherine Russ, Elizabeth Russ, and Ann Russ Sullivan, who were named as plaintiffs in the case. And you can see their names on the first page of the complaint. In the affidavit of title that was submitted on their behalf by Ann Sullivan, they said that the land was owned by the Rust Minch Farms LLC. Those plaintiffs owned no land abutting the defendant's land, and they had no standing to sue. The LLC was not named in the complaint as a plaintiff, and the trial court did not have personal jurisdiction to award the LLC some of the defendant's land. But just as flawed as the lack of personal jurisdiction issues in this judgment is also issues regarding the identification of the land that the plaintiffs owned abutting defendant's land and the parcels of defendant's land that they submit that they own due to reversion. First, the trial court could never have determined whether plaintiffs had proven their complaint with respect to the disputed land because the court never had a highlighted version of Exhibit C of the complaint. This court still has no highlighted copy because there never was a highlighted copy in the trial court record. Now, if you look at the trial court record on appeal in Paragraph 11 of the complaint, it says plaintiffs owned these parcels of defendant's land. Look at Group Exhibit C, and then if you look at Group Exhibit C, you'll see page after page recopied defendant's deed, you know, like the front page or the second page recopied and at the bottom of the page has the plaintiff's name. But if you look up, there's no highlighting on that page, none. And without knowing what land defendant was about to lose, it's not fair to defend it because we can't defend ourselves. But without that information, this is my point is really without that information, it was impossible for the trial court to have understood what land was contested. If the contested land is not identified in the complaint and the abutting land is not identified in the complaint because it was never pled what land plaintiffs own, then the court could enter no judgment that awarded land to the plaintiffs. In making an award of land, the trial court allowed the plaintiffs to choose whatever land they wished as their relief under the judgment. There was no limit to the land the plaintiffs could have been awarded since the trial court did not require proof to conform to the pleading. Instead, the trial court thought that because of the default, they got a golden ticket. And that is not what the law allows. Now, before I saw the record on appeal, I didn't know that the trial court didn't even know what land was being contested. I didn't know that Exhibit C wasn't highlighted in the trial court record. I only knew that on appeal. So, in the trial, I did my best to take, I had a highlighted copy. I happen to have a highlighted copy. So, I did my best to compare the information that was in the affidavits of title that was submitted by the plaintiffs with the highlightings that were in Exhibit C attached to the complaint. And I believe that the affidavit of title, but what was the original deed, how the railroad took the property? Was that ever a part of the record? No, the only, no, that was never part of the record. So, do we know if the railroad purchased any of this land in fee simpler? Was it all right away or do we even know that? Well, this is a default case. So, we don't know that and it's not in the record. The only thing in the record is that the land was obtained by condemnation. That's what was pled by the plaintiff. Well, if it's obtained by condemnation, was it obtained as fee simple then or were they only claiming it right away? Do we still don't know that either? Well, my third argument, my third argument, which I wasn't focusing on here, but my third argument was that actually because of the originating legislation that gave the charter to the Havana Lincoln and Champaign Railroad, the original railroad, it was a 1867 statue, which is in the materials that I submitted and in the appendix with my brief, is that that statue that created the Havana Railroad said that it acquired all of its land regardless of how it was obtained by fee simple. And that statute also says that it could use the condemnation statute of, I think, 1857, which is also, or 1852, if it was taking land by condemnation. And the 1852 statute regarding condemnation said railroads that condemn get their land in fee simple. So, there are two 19th century laws that I have placed into the record on appeal that I submitted to the trial court at trial showing that in this particular case that the Havana Railroad, which in the complaint, the plaintiff said it was the Havana Railroad that took the land originally, those statutes show that the Havana Railroad acquired all of its land in fee simple, even condemned land is obtained in fee simple under those two statutes. All right, counsel, I'm sorry, any further questions, Justice Fung? No, thank you. Justice Barbaras? Not right now. You'll be given some rebuttal time. You've exceeded your time quite a bit. You were so generous. Thank you. You may proceed. Thank you. May it please the court and counsel. This case revolves around a default judgment, of course, as you well know now. We filed this complaint in DeWitt County in May of 2023. There is a sister case, almost identical, that had been previously filed in DeWitt County involving the same issues in the same right away. And when I filed this complaint, I directed service of summons to the Champaign County Sheriff's Office for service on the defendant's registered agent. We were unable to get service on the registered agent. So I, at that point, put in process substitute service on the Illinois Secretary of State. But before I sent that substituted service summons to the Secretary of State, I contacted the defendant's counsel by email and told him I had filed a complaint against his client, Heartland Pathways. And I asked him, would you like a copy of the complaint? His secretary responded, yes. So I sent him a copy of the complaint. Never heard another word from him. He is litigating this sister case in DeWitt County. And the circuit clerk's office is right across the hallway from the courtroom that case was being held in. For inexplicable reasons, which I would like to hear the reasoning for, they did not respond to the complaint. Heartland did not respond to the complaint. They did not contact me. They filed no pleadings. I waited over half a year and then filed a motion for default judgment. I gave notice to Heartland of the filing of the default judgment, although I did not have to by rule because they were in default. And the case was set before Judge Weber in DeWitt County, who's very familiar with the facts of these cases because he's hearing both of them or was hearing both of them before his retirement. But at the motion for default, the defendant argued that the reason they didn't respond to the complaint was that the registered agent was mixed up and didn't understand what substituted service of summons was. But when counsel Miss Nally was making that argument, she was unaware, obviously, that I had emailed Mr. Culp, the attorney for Heartland, and told him I was filing the complaint and sent him a copy of the complaint. So it's inexplicable why the defendant did not respond to this complaint. I waited over half a year to file a motion for default judgment. The judge, after hearing arguments of counsel, came to the conclusion that this was a case of, it was an inadvertent mistake. It was purposeful. It was actually purposeful. His words were, he called it negligence and that it was willful was his word. He said the negligence was willful, the failure to respond to the complaint. And in order to escape having a default judgment entered against you, the defendant has to put forth some argument, good faith, good cause for the default. And the only argument they could come up with, based on my recollection and the record, was that the registered agent was confused. And then he didn't realize there was such a thing as substituted service. But that doesn't work because the judge heard my argument and my explanation of the email to the defendant's counsel that I was filing a complaint and do you want a copy of the summons? So what else could the judge say or think except that this was willful neglect? They intentionally neglected to respond to the case. And even to this day, we really have never gotten an explanation of what's going on. I don't know. But the important thing is, is that when a default judgment is entered against a party, the allegations in the complaint are deemed admitted. Now, counsel for the defendant has filed a brief, which is really a motion, a combination of a motion to dismiss and a motion for summary judgment. I have not heard any argument explaining a basis or reason for this default. And unless the defendant can explain to this court why they should not have been defaulted and why they have a good cause for failing to respond, then this case is over. They don't get to argue these factual allegations, most of which are not well taken. For instance, this argument about the Illinois Central Railroad conveying fee simple title to Heartland Pathways is ludicrous because the Illinois Central Railroad, all they had was an easement and gross, which means they had a railroad easement that only a railroad could use, and they could only transfer that easement and gross to another railroad. They could not transfer to anyone else. The proof that they knew, the proof that Illinois Central knew and that Heartland knew that all that Illinois Central had was an easement is the fact that Heartland attempted in the Interstate Commerce Commission proceedings where the Illinois Central Railroad sought permission to abandon the right-of-way, Heartland filed a motion to have the Interstate Commerce Commission issue an interim trail use order. And the reason you would have an interim trail use order entered is because the railroad, in this case Illinois Central Railroad, all they had was a easement and gross. The purpose of an interim trail use order is to prevent the loss of the easement. Normally when a railroad right-of-way easement is non, and there's no use, it's non-user, the easement ceases and the land, the underlying landowner is unburdened from that easement, and that's exactly what happened in this case. And you would think that the Illinois Central Railroad knows what they own and what they don't own. And they do, believe me, they know more about this right-of-way than any of us and they keep track of it and they know what they have and what they don't have. And this deed that they presented to the Heartland Pathways was a very clever, carefully worded instrument wherein they conveyed the right-of-way. And as I've previously said, the right-of-way, a railroad right-of-way, can only be conveyed to another railroad. It's an easement and gross. And they could not pass fee simple title to Heartland Pathways, but they, I'm sure they got paid money by Heartland Pathways for this deed. And it may astonish this court that the Illinois Central Railroad would take money from somebody like Heartland and give them a worthless deed, but it's done all the time. It's not, if you're foolish enough to pay them the money, and to take this deed without determining whether you're actually getting anything, they got nothing from that deed. And at one time, Heartland was arguing they owned the right-of-way by adverse possession. Now I think they're arguing that they had good title from Illinois Central Railroad. It goes back and forth. But the long and short of it is Heartland Pathways has no property interest in that right-of-way. And the idea that the statute of limitations has somehow abolished the plaintiff's interest in this right-of-way has no support in the law. And I think counsel knows that. I think she knows that. And there is a well-known case here in Illinois, Snobble, which is cited in my brief, S-C-H-N-A-B-E-L versus County of DuPage 101 Illap 3rd 553, which states that the statute of limitations does not run against the fee simple owner that is burdened with the railroad right-of-way. It's just as simple as that. And so this argument that the plaintiff's claim is barred by the statute of limitations just does not hold water. And the Snobble case is an excellent explanation of the law of abandoned railroad right-of-way. But the most important thing that I can argue is that the defendants have been defaulted. A default judgment has been entered against them. And the effect of that default judgment is that the allegations of the complaint are deemed admitted. Now, Heartland wants to argue the facts, but they didn't file an answer. They never instituted any discovery. And in the appellate court, they want to basically argue a combination of a motion to dismiss and a motion for summary judgment. It's too late. They lost that right by being in default. You can't, in the state of Illinois, when you have a default judgment entered against you, you don't get to argue the facts after the default. That's all I have. Any questions, Justice Vaughn? Isn't the test in deciding whether or not a default judgment should be vacated, whether or not substantial justice is being done between the litigants? And wouldn't that involve having to argue a little bit of the facts to show that substantial justice is not being done? The most important answer to that question is you have to show first that you have good cause for the default. If you cannot show good cause, the issue of substantial adjustment doesn't even appear or come before the court. And in this case, they were unable to provide Judge Weber with any argument of good cause. The fact that your registered agent thinks he hasn't been served, there's cases out there that tell you that that is not good cause. Mistakes, inadvertence of counsel, that's not good cause. They have never, in this case, presented good cause for their default. And because they have not done that, the issue of substantial justice or whatever else might come to mind doesn't even enter the case. Anything further, Justice Vaughn? Thank you. Justice Barberis, any questions? No. All right, counsel. Thank you. Appellant, you may now present rebuttal. Oh, there you go. I'm on. Just to reply to some of the statements made by Mr. Willems. If you look at the record of the emails sent by him or his staff to Mr. Culp's office, what it shows, it's not that Mr. Culp got those emails, but that his staff got those emails. There's nothing in those emails that show that either Mr. Culp got the emails or that, most importantly, or that the defendant got the email. So I suggest you look at those emails if that's an issue that is important to you. They're on C90-91 of the record. He stated that defendant gave no reasons why they didn't respond to the complaint. We, in fact, gave lots of reasons, and there are two. There are submitted on the record, a verified motion, and later an affidavit that goes on for several pages that address the issues that go to substantial justice. Not good cause, because that's not the test on default cases. It's would a default achieve substantial justice? That's the test. The good cause test that the plaintiffs talk about in their brief is a federal civil procedure test, and you'll see that when you, if you read my reply brief, I talk about this specifically. The issue is substantial justice. It is not a good cause. Also, he said that what the Illinois Central Railroad had was an easement in gross, but that is not proven by his complaint because he doesn't have the deed from the landowner to the Havana Railroad who originally got the right-of-way. So, that is not on the record, and, in fact, since it's the Havana Railroad and since the plaintiff has argued that it was taken by condemnation, those 19th century statutes that I talked about in my earlier argument in which I submitted to the court in my briefs are the ones that should apply. The Schnabel case that was referenced by the plaintiff's counsel, the limitation period discussed in that case is not 13-101. It's actually, I think, 13-102, a seven-year limitation period, and it was not a situation where there was a 20-year lapse of time. So, for that reason, the Schnabel case would not apply. With respect to other issues raised in the Schnabel case that sound like they might apply to this case, I think it's really important that you notice that the Schnabel case is based on a deed, the originating deed between the railroad and the abutting landowner, and this is not, it was not a condemnation case as is alleged by the plaintiff. And then, also, with respect to his statement that I'm arguing the facts, yeah, I'm arguing the facts. I'm arguing the facts plaintiff has presented. I am arguing what he has alleged and what they have alleged in the complaint and what they state under oath and their affidavits of title that were submitted on the record. I'm arguing facts that they put into the record, not facts that I put into the record or the defendant put into the record. I'm arguing their facts because that's what I'm left with because of the default judgment. It's the, I think that, I think that this case is really a statute of limitations case first and foremost. That deed between the Illinois Central Railroad and the defendant was written in 1988. It was recorded in 1989. Once that deed was recorded, the world knows that the defendant is claiming that land. Everyone knows because that is what's reflected in the public record. And if you have a problem with that deed, then you need to contest it within 20 years and they did not. And that is why defendants should win this case. Thank you. Any further questions? This is fine. One other question is that my understanding is some of this land, right away land or whatever you want to call it, was in Piatt County and some was in DeWitt County. Were the two separate cases filed? Was one case filed in Piatt County and one in DeWitt or just one case in DeWitt? One case in DeWitt County. But the DeWitt County case addressed land in Piatt County? Well, this is what the, this is what the complaint said. I think in maybe the first paragraph of the deed between the Illinois Central Railroad and the defendant. And there is no Piatt County land in that deed. That is a DeWitt County deed. And so, so I submit that no, there is no Piatt County land in this case because it was not reflected in that deed. That is only DeWitt County deed. But did the default order address Piatt County land? Yes, it did. The judgment awarded anything the plaintiff wanted in its judgment. The court gave them everything they wanted. Thank you. Any further questions? Justice Barberis? No. All right, counsel, thank you very much for your arguments. We will take this matter under advisement and issue a ruling in due course.